1

2

3                                                                          O

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   CALIFORNIA EXPANDED METAL        )   Case No. CV 12-10791 DDP (MRWx)
     PRODUCTS CO., a California        )
12   company,                         )
                                      )
13                    Plaintiff,      )   **ORDER GRANTING PLAINTIFF'S MOTION**
                                      )   **TO DISMISS AMENDED COUNTERCLAIM**
14        v.                          )
                                      )
15   CLARKWESTERN DIETRICH            )
     BUILDING SYSTEMS LLC doing       )
16   business as CLARKDIETRICH         )
     BUILDING SYSTEMS, an Ohio        )   [Dkt. No. 129]
17   limited liability company;       )
     JAMES A. KLEIN, an               )
18   individual,                      )
                                      )
19                    Defendants.     )
     _____)
20

21        Presently before the court is Plaintiff California Expanded

22   Metal Products Company ("CEMCO")'s Motion to Dismiss

23   ClarkWestern's Amended Counterclaim.[1]  Having considered the

24   submissions of the parties, the court grants the motion and

25   adopts the following Order.

26

27   ────────────────────

28        [1]Although Defendant is now known as ClarkWestern Dietrich
     Building Systems LLC, and does business as ClarkDietrich Building
     Systems, the court refers to Defendant and its predecessor as
     ClarkWestern for the sake of consistency.

## I. Background

Plaintiff CEMCO is a California corporation. (Third Amended Complaint ("TAC") ¶ 1.) Defendant James A. Klein ("Klein") was, at one time, a CEMCO employee. (TAC ¶ 8.) CEMCO alleges it entered into a contract ("the Agreement") with Klein, under which he promised CEMCO exclusive negotiation rights for an exclusive license to any construction-related technology that Klein might invent. (TAC ¶ 9.) Under the Agreement, in the event CEMCO and Klein were unable to agree on license terms, CEMCO would enjoy a right of first refusal on any licensing agreement that Klein reached with a third party. (Id.)

Klein later patented a new construction technology, but did not grant an exclusive license to CEMCO. (TAC ¶ 10.) Instead, Klein licensed his new "Blazeframe" technology to CEMCO's biggest competitor, Defendant ClarkWestern.[2] (Id.)

Klein later filed a patent infringement action against CEMCO in the Western District of Washington. See CV 13-04669 DDP-MRW. CEMCO then initiated this action against Klein and ClarkWestern. Clarkwestern filed a counterclaim against CEMCO, alleging a single claim for Tortious Interference with Prospective Economic Advantage. (Dkt. 115.)

ClarkWestern's counterclaim alleged that CEMCO intentionally interfered with license discussions between Klein and ClarkWestern by "maintaining uncertainty" regarding CEMCO's own claims regarding Klein's patent. (Counterclaim ¶ 11.)

---

[2] The court refers to Klein and his company, BlazeFrame Industries Ltd. ("Blazeframe") interchangeably.

1  Specifically, CEMCO allegedly misrepresented that its exclusive
2  licensing Agreement with Klein applied to the BlazeFrame
3  invention, disputed Klein's ownership of the patented technology,
4  misrepresented its willingness to settle the ownership dispute,
5  and amended its own patent applications to avoid resolution of
6  ownership issues.  Because of these intentional acts,
7  ClarkWestern alleged that its license agreement with Klein was
8  delayed by two years, during which time CEMCO sold its "FAS
9  Track" version of Klein's product royalty-free.

10  CEMCO moved to dismiss the Counterclaim.  This court,
11  concluding that the existence and timing of any economic
12  relationship between Klein and ClarkWestern was not adequately
13  pleaded, granted the motion and dismissed the Counterclaim with
14  leave to amend.  CEMCO now moves to dismiss the Amended
15  Counterclaim ("AC").

16  The general substance of the Amended Counterclaim has not
17  changed significantly.  In short, ClarkWestern alleges that CEMCO
18  intentionally interfered with license discussions between Klein
19  and ClarkWestern by maintaining uncertainty regarding CEMCO's own
20  claims regarding Klein's patent and, therefore, Klein's ability
21  to license the Blazeframe technology to ClarkWestern.  (AC ¶ 20.)
22  Specifically, CEMCO allegedly misrepresented that its exclusive
23  licensing Agreement with Klein applied to the BlazeFrame
24  invention, disputed Klein's ownership of the patented technology,
25  misrepresented its willingness to settle the ownership dispute,
26  and amended its own patent applications to avoid resolution of
27  ownership issues.  (AC ¶¶ 29, 33, 38, 46).  In the interim, CEMCO
28

1 allegedly sold its own, unlicensed FAS Track version of the

2 Blazeframe technology . (Id. ¶ 52.)

3    CEMCO now moves to dismiss the Amended Counterclaim.

4 **II.  Legal Standard**

5    A complaint will survive a motion to dismiss when it

6 contains "sufficient factual matter, accepted as true, to state a

7 claim to relief that is plausible on its face." Ashcroft v.

8 Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.

9 Twombly, 550 U.S. 544, 570 (2007)).  When considering a Rule

10 12(b)(6) motion, a court must "accept as true all allegations of

11 material fact and must construe those facts in the light most

12 favorable to the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447

13 (9th Cir. 2000).  Although a complaint need not include "detailed

14 factual allegations," it must offer "more than an unadorned, the-

15 defendant-unlawfully-harmed-me accusation."  Iqbal, 556 U.S. at

16 678.  Conclusory allegations or allegations that are no more than

17 a statement of a legal conclusion "are not entitled to the

18 assumption of truth." Id. at 679.  In other words, a pleading

19 that merely offers "labels and conclusions," a "formulaic

20 recitation of the elements," or "naked assertions" will not be

21 sufficient to state a claim upon which relief can be granted.

22 Id. at 678 (citations and internal quotation marks omitted).

23    "When there are well-pleaded factual allegations, a court

24 should assume their veracity and then determine whether they

25 plausibly give rise to an entitlement of relief." Id. at 679.

26 Plaintiffs must allege "plausible grounds to infer" that their

27 claims rise "above the speculative level." Twombly, 550 U.S. at

28 555. "Determining whether a complaint states a plausible claim

1  for relief" is a "context-specific task that requires the

2  reviewing court to draw on its judicial experience and common

3  sense." Iqbal, 556 U.S. at 679.

4  **III. Discussion**

5       As explained in this court's prior Order, a claim for

6  intentional interference with prospective economic advantage

7  requires (1) an economic relationship between the plaintiff and a

8  third party with the probability of future economic benefit to

9  the plaintiff, (2) defendant's knowledge of that relationship,

10  (3) defendant's intentional, independently wrongful act to

11  disrupt the relationship, (4) actual disruption, and (5) economic

12  harm to the plaintiff. Marsh v. Anesthesia Serv. Med. Group.

13  Inc., 200 Cal.App.4th 480, 504 (2011) (citing Korea Supply v.

14  Lockheed Martin Corp., 29 Cal.4th 1134, 1153 (2003)). An act's

15  independent wrongness depends on its unlawfulness. Id. CEMCO

16  argues, as it did with respect to the Counterclaim as previously

17  pled, that ClarkWestern's Amended Counterclaim fails because (1)

18  the AC does not allege a sufficient economic relationship between

19  ClarkWestern and Klein and (2) CEMCO's alleged acts were not

20  unlawful.

21       Intentional interference claims protect "the expectation

22  that the [economic] relationship eventually will yield the

23  desired benefit, not necessarily the more speculative expectation

24  that a potentially beneficial relationship will arise." Korea

25  Supply, 29 Cal.App.4th at 1164 (quotation marks and citation

26  omitted). The tort can be established by showing interference

27  with "a contract which is certain to be consummated." Kasparian

28  v. County of Los Angeles, 38 Cal.App.4th 242, 261 (1995).

Here, ClarkWestern's earlier Counterclaim alleged that it began an economic relationship with BlazeFrame in 2010 "as a result of BlazeFrame's claims to ownership of the BlazeFrame Technology and [ClarkWestern's] interest in obtaining a license. . . ." (Counterclaim ¶ 8.) The Counterclaim also alleged that BlazeFrame and ClarkWestern "began discussing a possible license" in January 2010 and "engaged in on-going discussions with BlazeFrame for the next two-plus years regarding a potential license . . . ." (Id. ¶ 9.)

The Amended Counterclaim changes certain factual allegations and adds others. ClarkWestern now alleges that it entered into an economic relationship with Klein earlier, in 2009, and that the relationship continued through 2012 when ClarkDietrich licensed the BlazeFrame technology. (AC ¶ 9.) As this court has noted, "[t]o show an economic relationship, the cases generally agree that it must be reasonably probable the prospective economic advantage would have been realized but for defendant's interference." Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc., No. 12-cv-5847-WHO, 2014 WL 524076 at *14 (N.D. Cal. Feb. 14, 2014) (internal quotation and citation omitted). Here, the the AC alleges that ClarkWestern and Klein had "preliminary discussions" in August 2009 and had "progressed beyond the exploratory stage" by November 25, 2009. (Id.) After that date, Blazeframe and ClarkWestern entered into a confidentiality agreement that apparently only then allowed for discussions of the actual terms of a "possible license." (Id. ¶¶ 9-10). As stated in this court's prior Order, however, initial talks such as these, concerning only the possibility of a future license

agreement, do not give rise to a reasonable probability that an agreement would ultimately be reached.  See Google Inc. v. Am. Blind & Wallpaper Factory , Inc., No. C 03-5340, 2005 WL 832398 at *9 (N.D. Cal. Mar. 30, 2005) ("Allegations that amount to a mere hope for an economic relationship and a desire for future benefit are inadequate to satisfy the pleading requirements . . . .") (internal quotation and citation omitted); Sole Energy Co. v. Petrominerals Corp., 128 Cal.App.4th 212, 243 (2005); Kasparian, 38 Cal.App.4th 242, 261 (1995).

The Amended Counterclaim, therefore, now alleges additional facts, which, according to ClarkWestern, support the contention that ClarkWestern's economic relationship with Klein began "in at least January 2010 and continued through 2012 when Clark[Western] and BlazeFrame executed a license . . . ." (Opp. at 4).  The AC now alleges that BlazeFrame presented an initial term sheet for a license to ClarkWestern in December 2009.  (AC ¶ 10.) ClarkWestern did not accept those terms, but nevertheless, announced to the public in January 2010 that it was venturing with BlazeFrame.  (Id. ¶ 11.)  ClarkWestern further alleges that that public announcement spurred CEMCO to contact ClarkWestern on February 5, 2010 in an attempt to discourage the latter from entering into a license with BlazeFrame.  (Id. ¶ 12.)

That communication and its fallout allegedly stalled license negotiations until December 2010, when BlazeFrame presented a revised term sheet to ClarkWestern.  (Id. ¶¶ 15-16).  Although ClarkWestern alleges that the companies exchanged drafts of a "substantially final form" of the license between then and March 2011, the license was not "finalized" until August, and the

1  license agreement was not signed until March 2012, over two and a

2  half years after the relationship between Klein and ClarkWestern

3  allegedly began.  (Id. ¶¶ 17.)

4   ClarkWestern alleges that the economic relationship between

5  itself and BlazeFrame "probably would have resulted in an

6  economic benefit to Clark[Western] in the form of a license to

7  the BlazeFrame Technology and [resulting] revenues . . . much

8  sooner, if not for CEMCO's improper interference." (AC ¶ 20.)

9  Notably, the Amended Counterclaim does not provide detailed

10  allegations regarding any of the terms proposed in the various

11  term sheets.  The AC does allege that the license agreement was

12  finally executed in March 2012 "only after Clark[Western]

13  received repeated assurances from BlazeFrame that the related

14  legal issues between CEMCO and Klein had been resolved . . . ."

15  (Id.)

16   Prior to CEMCO's first allegedly interfering act on February

17  5, 2010, however, ClarkWestern had no indication that there were

18  any unresolved legal issues between CEMCO and Klein.

19  Nevertheless, ClarkWestern did not accept the license terms

20  proposed by BlazeFrame in December 2009. (AC ¶ 11.)  Despite

21  that failure to reach an agreement, the Amended Counterclaim

22  alleges, somewhat conclusorily, that "[b]ased on the productive

23  licensing discussions and the content of the initial term sheet,

24  [ClarkWestern] had a reasonable expectation that the licensing

25  talks would bear fruit . . . ." (AC ¶ 11.)  As stated above,

26  however, preliminary, exploratory negotiations do not give rise

27  to a reasonable expectation of a particular economic benefit.

28  The only additional subsequent fact alleged is that ClarkWestern

announced to the public in January 2010 that it was partnering with Blazeframe.[3]  While such a statement might conceivably result from a reasonable expectation of an economic benefit, the announcement itself does not constitute a fact upon which a reasonable expectation could be based.  Without more, such as facts regarding the existing state of negotiations at the time of the announcement, or perhaps a comparison between the terms on the table in January 2010 relative to those ultimately agreed to over two years later, the Amended Counterclaim's allegation that ClarkWestern had a reasonable expectation upon which to base its public announcement is little more than a legal conclusion.

Because the Amended Counterclaim fails to allege facts suggesting that a contract was certain to be consummated, ClarkWestern has not adequately alleged the existence of an economic relationship between the plaintiff and a third party with the probability of future economic benefit to the plaintiff, and the Amended Counterclaim must be dismissed.  The court need not, therefore, address CEMCO's arguments regarding the sufficiency of the Amended Counterclaim's allegations of independently wrongful, intentional acts on CEMCO's part to disrupt the purported relationship between Klein and ClarkWestern.

The court notes, however, that ClarkWestern's theory appears to attempt to shift ordinary business risks onto a competitor by way of a tortious interference claim.  In ClarkWestern's words,

---

[3] CEMCO's reaction to ClarkWestern's announcement would seem to have little bearing on the reasonableness of ClarkWestern's prior expectation.

"the crux of [the] counterclaim is based on the allegation that CEMCO engaged in a deliberate and intentional course of conduct to prevent or at least delay Clark[Western] and Blazeframe from entering a license agreement and to diminish the value of the licensed technology." (Opp. at 16:6-9). That course of conduct allegedly included "intentionally and repeatedly avoiding resolution of the legal issues between CEMCO and Klein" and being "unwilling to address the situation" with Klein through discussions with ClarkWestern. (AC ¶¶ 38, 44). Even putting aside the vagueness of these allegations, it strikes the court as implausible to attribute a two-year licensing delay to avoidant acts on CEMCO's part.

It is clear from the Amended Complaint that Klein and ClarkWestern were in close communication, and that ClarkWestern was fully apprised of the nature of the dispute between CEMCO and Klein. (AC ¶¶ 13-14, 16.) ClarkWestern was fully capable, therefore, of making an independent assessment of CEMCO's claims. The nature of those claims did not change between 2010 and the filing of the Amended Counterclaim. If, as ClarkWestern now contends, CEMCO's claims against Klein were meritless or pursued in bad faith, there is no reason why those claims should have prevented ClarkWestern from entering into the licensing agreement with Klein for two years. Thus, even if ClarkWestern did have an established economic relationship with Klein sufficient to create a reasonable expectation of a future benefit, ClarkWestern cannot plausibly claim that years of delay in executing a licensing agreement was the result of CEMCO's allegedly meriq1tless assertions of ownership of the Blazeframe technology.

**IV.    Conclusion**

        For the reasons stated above, CEMCO'S motion is GRANTED. ClarkWestern's Amended Counterclaim is DISMISSED, with prejudice.


IT IS SO ORDERED.


Dated: July 1, 2015

                                        DEAN D. PREGERSON
                                        United States District Judge